1               UNITED STATES JUDICIAL PANEL

2                 ON MULTIDISTRICT LITIGATION

3                              )
                               )
4                              )
                               )
5    IN RE:  OPENAI, INC.,     )
     COPYRIGHT INFRINGEMENT     )          MDL NO. 3143
6    LITIGATION                )
                               )
7                              )
                               )
8                              )

9

10                   TRANSCRIPT OF PROCEEDINGS

11                     March 27, 2025
                        9:46 a.m.

12

13   HELD AT:        United States District Court
                     Charles R. Jonas Federal Building
14                   401 West Trade Street
                     Charlotte, North Carolina  28202
15
     BEFORE:         The Honorable Karen K. Caldwell, Chair
16                   The Honorable Nathaniel M. Gorton
                     The Honorable David C. Norton
17                   The Honorable Dale A. Kimball
                     The Honorable Matthew F. Kennelly
18                   The Honorable Roger T. Benitez
                     The Honorable Madeline Cox Arleo
19

20

21

22

23

24

25

```
 1  Appearances:

 2  For OpenAI, Inc.; Open AI OpCo, L.L.C.; Open AI GP, L.L.C.;
    OpenAI, L.L.C.; OpenAI Startup Fund GP I, L.L.C.; OpenAI
 3  Startup Fund I, L.P.; OpenAI Startup Fund Management, L.L.C.;
    OpenAI Global, L.L.C.; OAI Corporation L.L.C.;
 4  OpenAI Holdings L.L.C.:

 5                                 Robert A. Van Nest, Esq.
                                   Keker, Van Nest, & Peters, LLP
 6                                 633 Battery Street
                                   San Francisco, California  94111
 7
    For Microsoft Corporation:     Jeffrey S. Jacobson, Esq.
 8                                 Faegre Drinker Biddle & Reath LLP
                                   600 Campus Drive
 9                                 Florham Park, New Jersey 07932

10  For The New York Times;        Steven Lieberman, Esq.
    Daily News, LP, et al.;        Rothwell, Figg, Ernst &
11  Center for Investigative       Manbeck, P.C.
    Reporting:                     901 New York Ave NW, Suite 900
12                                 Washington, DC 20001

13  For Raw Story Media, Inc.,     Matthew Topic, Esq.
    et al.; The Intercept          Loevy & Loevy
14  Media, Inc.:                   311 N Aberdeen Street, Suite 3
                                   Chicago, Illinois 60607
15
    For Ta-Nehisi Coates; Junot Diaz; Andrew Sean Greer; David
16  Henry Hwang; Laura Lippman; Rachel Louise Snyder; Jacqueline
    Woodson, Paul Tremblay; Sarah Silverman; Christopher Golden;
17  and Richard Kadrey:

18                                 Joseph R. Saveri, Esq.
                                   Joseph Saveri Law Firm LLP
19                                 601 California St., Suite 1505
                                   San Francisco, California 94108
20
    For Authors Guild, et al.:     Rachel J. Geman, Esq.
21                                 Lieff, Cabraser, Heimann &
                                   Bernstein
22                                 250 Hudson Street, 8th Floor
                                   New York, New York  10013
23

24

25
```

1              Deborah Cohen-Rojas, R.D.R., C.R.R., F.C.R.R.
                      Official Court Reporter
2         Deborah_CohenRojas@ncwd.uscourts.gov  704.350.7497
          *Proceedings recorded by mechanical stenography, transcript*
3              *produced by computer-aided transcription.*

4

5         THE COURT:  The panel will now turn to MDL No. 3143,

6   the OpenAI Copyright Infringement Litigation.  Mr. Van Nest.

7         MR. VAN NEST:  Good morning.  Madam Chair, panel

8   members, may it please the Court.  My name is Bob Van Nest,

9   from Keker, Van Nest & Peters, and I'm here on behalf of the

10  defendant, OpenAI LLC.

11      This is a very complex set of cases, not only because the

12  technology, artificial intelligence, is brand-new, but the

13  legal issues are novel, as well.  It's also a highly

14  consequential case because OpenAI has the most advanced

15  artificial intelligence technology in the world, and what

16  happens in this case may very well set the course for

17  artificial intelligence in our country and elsewhere.

18      Right now five district judges and two magistrates are

19  handling the same issues over and over again, and we're asking

20  the panel to fix that situation.  There are really three

21  reasons for that.

22      One, all these cases have the same core element at their

23  heart, right, that OpenAI improperly used copyrighted material

24  to train the models like ChatGPT.  That's central in all the

25  cases.  And the fair-use defense, which we're asserting, is

1 also central across all these dozen cases.

2      Secondly, despite months of efforts, we haven't achieved

3 deposition coordination.  Right now, dozens and dozens of

4 OpenAI employees and formers and Microsoft employees are

5 subject to multiple depositions on the same issues across all

6 these cases.  Our efforts to coordinate voluntarily have

7 failed.

8      And, third, there's a big potential in this case for

9 inconsistent rulings.  As I mentioned, there are five district

10 judges and two magistrates grappling with the same issues based

11 on the same set of facts in various venues across the country.

12 We need to fix that.

13      We didn't file this motion until we exhausted all our

14 efforts to coordinate voluntarily.  We spent months and bent

15 over backwards to achieve one result, that there be one

16 deposition across all the cases for each witness.  We offered

17 additional hours, 12 hours, we offered two days.  We have bent

18 over backwards to make this happen.  None of the judges have

19 ordered it, and the plaintiffs won't agree to it.  The

20 plaintiffs have simply refused to agree to that because,

21 apparently, they benefit -- or they think they do -- from

22 multiple opportunities.

23      Just as one example, there have been four substantive

24 OpenAI depositions to date.  The news plaintiffs in New York

25 attended them, they sat there, they didn't ask questions, and,

1  as soon as the deposition finished, they sent notices for

2  another deposition of the same witness on the same issues

3  months later.  That is not going to work.  Collectively they

4  have sought testimony from more than 50 OpenAI current and

5  former employees and dozens of Microsoft employees, as well.

6  None of the judges have -- have put a stop to this so far.

7      Now, the term sheet they sent in here last week is dead,

8  right?  They shouldn't have filed that.  It was a confidential

9  discussion.  No one signed it, no one is planning to sign it,

10  because the New York plaintiffs have said we're not ready to

11  start taking depositions of your 30(b)(6) witnesses for months

12  now, and in California we have a discovery cutoff coming on

13  April 28th.

14      Depositions have just now started.  Judge Martínez-Olguín

15  in California has set a soft discovery cutoff of April 28.

16  So far we have taken four depositions.  There's another 60 or

17  70 to go on the defense -- defense witnesses and another

18  50 plaintiffs, class reps and otherwise, to go.  The case

19  schedules have made this challenging.

20      Judge Martínez-Olguín wants to stick on her schedule

21  earlier in California.  In New York, there's no schedule for

22  any substantive motions after discovery.  Class cert, the

23  Daubert, summary judgment, none of that has been scheduled to

24  date.

25      Both class plaintiffs are seeking to amend their

1  complaints.  They're still seeking more custodians.  They have

2  many depositions left to go.  The parties collectively have

3  designated, disclosed, more than 30 experts.  So expert

4  discovery hasn't even begun, and this is an ideal time for the

5  panel to take action and give us a coordinated result.  I'll

6  take your questions.

7          JUDGE CALDWELL:  Judge Kimball.

8          JUDGE KIMBALL:  Do you expect any more cases to be

9  filed?

10          MR. VAN NEST:  I don't know, Judge Kimball, but cases

11  have continued to come in.  And we've had cases filed as

12  recently as three, four months ago, so I think there's a very

13  good possibility that other news organizations or other

14  websites will file.  But it's hard to predict the future.

15          JUDGE KIMBALL:  Thank you.

16          JUDGE CALDWELL:  Judge Kennelly.

17          JUDGE KENNELLY:  There seems to be some connection --

18  and I know that your side -- that the claims under the Digital

19  Millennium Copyright Act are different in some ways.  Can you

20  flesh that out a little bit?

21          MR. VAN NEST:  They are sort of a subset, your Honor,

22  of the -- the main copyright claims attack two things.  They

23  attack the use of material to train the models, and in some of

24  the cases they also attack the output.  Sometimes they claim

25  there's regurgitation and so on.  The DMCA claims are related,

1 but a little different.  The DMCA claims relate to removing

2 so-called copyright management information in order to

3 facilitate or promote --

4          JUDGE KENNELLY:  But it all involves the same

5 material --

6          MR. VAN NEST:  It all involves the same material.

7 It's the same process.

8          JUDGE KENNELLY:  Yeah, okay.

9          MR. VAN NEST:  We train the same way and across.

10     And the one case that's an outlier, now that you mention

11 it, is the Intercept case, which Judge Rakoff has.  That's been

12 set for very early trial in the fall.  But as I said, none of

13 the other cases even have dispositive motions scheduled until

14 2026.  But Judge Rakoff has advanced that.  That case is a

15 subset, I would say, but many of the same issues will persist,

16 many of the same issues on the plaintiffs' side and defense.

17          JUDGE GORTON:  What about centralizing the class

18 actions and the news cases, but not including the DMCA and the

19 individual cases?  Wouldn't that be a halfway compromise --

20          MR. VAN NEST:  Well, you know what, your Honor?  That

21 would be better than where we are now.  It would be a lot

22 better than where we are now.  I do think, though, that there's

23 a lot of overlap between the Intercept case, which is set for

24 trial in the fall, and these other cases.  A lot of the same

25 evidence will be presented, the witnesses are essentially the

1  same, the defenses are essentially the same.  Fair use will be

2  in play in Intercept.

3      So I think, if we're going to centralize everything, we

4  ought to include the Intercept case, but your suggestion would

5  be a big improvement over what we have now, where we've got the

6  possibility of dozens and dozens of witnesses, most of whom are

7  in California and Washington, being deposed over and over again

8  because the plaintiffs have refused to coordinate.  That would

9  be a big improvement, yes, your Honor.

10      JUDGE ARLEO:  This might have been answered, but the

11  discovery, especially depositions for the DMCA case, will that

12  overlap substantially with the other cases?

13      MR. VAN NEST:  Absolutely.  The witnesses that talk

14  about how ChatGPT was trained are the same.  It's the training

15  that the DMCA is focused on because, during the training, they

16  claimed some CMI was removed.  And that process is the same

17  across all the models that are accused, and the same witnesses

18  will be presented.  So yes.

19      JUDGE ARLEO:  What about experts?

20      MR. VAN NEST:  I think the experts will be the same.

21  As I say, 30 experts have been disclosed so -- in the Intercept

22  case, it will be a smaller number.  But I know on our side, at

23  least, a lot -- there are not a lot of well-experienced,

24  willing experts in this field.  So both sides have, I think,

25  struggled to get people to do that.  And I think some of the

1  same experts will be in the Intercept case that we have in the

2  other copyright cases, too, your Honor.

3          JUDGE ARLEO:  Thank you.

4          JUDGE KIMBALL:  Which cases are set for the fall for

5  trial?

6          MR. VAN NEST:  It's actually the way Judge Rakoff does

7  it, Judge Kimball.  He sets a trial-ready date, which is late

8  September, and then he sets a pretrial, which is early October,

9  and then, at that pretrial, he sets the trial.  And sometimes

10 the trial follows by a month, and sometimes it follows by

11 longer depending on Judge Rakoff's calendar.  But we have a

12 trial-ready date in Intercept -- that's the only case with a

13 trial date -- in late September and a pretrial in early

14 October.  That's how he does it.

15         JUDGE CALDWELL:  Other questions?  Hearing none, we

16 thank you for your argument.  You have reserved a minute for

17 rebuttal.

18         MR. VAN NEST:  Thank you, your Honor.

19         JUDGE CALDWELL:  Mr. Jacobson.

20         MR. JACOBSON:  May it please the panel, Jeffrey

21 Jacobson, Faegre Drinker, on behalf of Microsoft.

22     Your Honors, when my two minutes are done, you're going to

23 hear from my friends on the other side, and the problem that

24 they're going to face is the two arguments they made in

25 opposition to centralization are, number one, Microsoft, my

1  client, is not a party to the California case, and, number two,

2  this will all be fine by the time we see you in March.

3      Microsoft has now sought to be made a party in California.

4  And even if that motion is denied, which we hope it is, we've

5  been served with a massive subpoena in California.  So we're in

6  California one way or the other.  And as for the argument this

7  is all going to be fine, it's not fine.  It has not -- it's, in

8  some ways, gotten worse.

9      We've made significant progress on document discovery,

10  but, as Mr. Van Nest said, deposition coordination is

11  essentially nowhere.  But, more importantly, at least one

12  jurist is going to have to get very acquainted with the way

13  large-language models work, the way these models were trained.

14  These are very complicated issues of fair use under copyright

15  law.  And as Mr. Van Nest said, there are 30 experts that have

16  been disclosed.  There are going to be very complicated Daubert

17  motions.

18      Right now the cases are on two different tracks because in

19  New York, under Second Circuit law, summary judgement must go

20  before a class certification.  We think that makes a lot of

21  sense.  We think the Second Circuit, when they looked at this

22  in the Authors Guild case a number of years ago, got it right.

23      In California right now, class certification is going

24  first, which, you know, that's going to -- that's got these

25  cases on two tracks, which doesn't make a whole lot of sense.

1  There are going to be very complicated -- as I said, there are

2  going to be very complicated Daubert motions.

3       You know, our position is that it -- this should really be

4  one judge.  It's very hard to understand why it shouldn't be

5  one judge, and our friends on the other side have not said why

6  it makes sense for multiple judges on both coasts to be diving

7  under these very complicated issues.

8       As my time is just about up, let me open myself up for

9  questions.

10            JUDGE CALDWELL:  Questions?

11            JUDGE KIMBALL:  Do you have a preference for

12  California or New York and, if so, why?

13            MR. JACOBSON:  Your Honor, what we stated is we have a

14  preference for a jurist that has experience in MDLs and, in

15  particular, with copyright and fair use.  We are venue agnostic

16  about where it should go.  We just want to -- we want somebody

17  who's going to exercise some real supervision over this.

18            JUDGE KIMBALL:  Thank you.

19            JUDGE BENITEZ:  So which would be more efficient as

20  far as witnesses and parties to appear at?

21            MR. JACOBSON:  Your Honor, OpenAI has expressed an

22  preference for the Northern District of California.  Microsoft,

23  my client, is okay with that.  We're based in Washington.  If

24  it's going to be the Northern District of California, we would

25  hope that the court would find us a judge who has MDL

1  experience and experience in this area.  So we're okay with the

2  Northern District of California, we're okay with venues in

3  California.  You know, it's -- we're a West Coast company, so

4  we're fine with a venue --

5          JUDGE BENITEZ:  Is that because you think that's the

6  most efficient forum?

7          MR. JACOBSON:  I -- I -- in -- it's a close call.  I

8  mean, I'm a New Jersey guy practicing in New York, but I'm

9  perfectly happy to get on a plane.  There's a lot of very

10 high-powered lawyers on both sides of this.  It's a

11 multi-decabillion-dollar dispute.  The where is much less

12 important than the who in my opinion.

13         JUDGE CALDWELL:  Any other questions?  Thank you for

14 your argument.

15         MR. JACOBSON:  Thank you, your Honors.

16         JUDGE CALDWELL:  Mr. Saveri.

17         MR. LIEBERMAN:  Steven Lieberman, your Honor.  We

18 agreed on a different order with the clerk this morning.

19         JUDGE CALDWELL:  All right.  Very well.  Yes, I see.

20 Thank you.

21         MR. LIEBERMAN:  Steve Lieberman, from Rothwell Figg.

22 I represent The New York Times company, the Daily News

23 plaintiffs, and I'm also speaking on behalf of the third news

24 plaintiff, the Center for Investigative Reporting.  These are

25 three cases that have been consolidated before Judge Stein in

1  the Southern District of New York.  May it please the Court, I

2  want to address the points that Mr. Van Nest raised

3  immediately.

4       First, while there are some similarities between these

5  cases in that they relate generally to GAI products -- general

6  artificial intelligence -- and they're against OpenAI, there

7  are scores and scores of important differences.

8       The cases in California largely relate to lawsuits on

9  behalf of authors who have written one or two books.  The

10 newspaper cases relate to millions of articles having been

11 scarfed up by OpenAI.

12      And the newspaper cases also don't just relate to the

13 issue of training.  They relate to the output of the content

14 from their products and something called Retrieval-Augmented

15 Generation, which is essentially real-time news.  Somebody

16 types in, "Who won the Chicago White Sox baseball game last

17 night," "What did Elon Musk do yesterday," and you get a

18 summary, for example, of Chicago Tribune or New York Times

19 articles.  That's not something that comes up in those cases.

20      There are special efforts that OpenAI made to select the

21 most valuable content to train their products, newspaper

22 content, New York Times content, Chicago Tribune content.  They

23 trained and they retrained their products on that.  There are

24 issues of hallucinations, which gave rise to the

25 trademark-dilution claims, which Judge Stein allowed to proceed

1  in his order yesterday.  There are a whole variety of issues

2  that have nothing to do with the training as it has to do with

3  text in general.

4       There aren't five judges who are dealing with these

5  issues.  In the Southern District of New York, the three news

6  cases have been consolidated in front of Judge Stein.  The

7  discovery is being handled by Magistrate Judge Wang.  The New

8  York class action cases are also in front of Judge Stein and

9  Judge Wang.

10      Judge Wang has been dealing with discovery issues in this

11  case, which are exceedingly complex.  We're dealing, in the

12  news cases, for example, with training logs and output logs

13  that involve petabytes of information.  Those are millions and

14  millions of filing cabinets.  Judge Wang has held four

15  multi-hour conferences where she supervised the protocols --

16  the protocols for examining those, for doing discovery, what

17  has to be produced and how.

18      Let me turn, because I see the yellow light is on, to the

19  deposition coordination.  The deposition-coordination protocol

20  is not dead.  It was virtually and entirely agreed upon at a

21  conference supervised by Judge Wang.  There were a couple of

22  little issues left, and our view is that OpenAI blew up the

23  protocol in anticipation of this hearing so that they could say

24  just what they said to the Court.

25      There's a dispute between the parties on one or two

1  issues, and there's a dispute between the parties as to how big

2  that dispute is, but the appropriate person to resolve that is

3  Magistrate Judge Wang, who has supervised those conferences and

4  dealt with the parties for the last year.

5          JUDGE CALDWELL:  Your time is up.

6      Questions?  Judge Benitez.

7          JUDGE BENITEZ:  So, counsel, you said in your argument

8  that there are cases that -- let's see -- don't also relate

9  to training.  I assume, by that statement, that you are

10  agreeing or in agreement with the fact that there is a common

11  question of fact, and that is the idea of training, how the

12  training took effect.  And that cuts across all of the cases,

13  doesn't it?

14          MR. LIEBERMAN:  The answer is no.  There's -- there is

15  a question of training in all the cases, but it's not a common

16  question of fact.  So -- and let me explain why.

17          JUDGE BENITEZ:  Please.

18          MR. LIEBERMAN:  The principle defense that the

19  defendants are going to have in this case is a fair-use

20  defense.  The United States Supreme Court in Google versus

21  Oracle, at page 20 of the decision, 593 U.S. 1, said fair-use

22  defense is an exceedingly fact-specific defense, and the

23  factors on which one decides fair use, the most important

24  factor the courts have found, is the fourth factor, which

25  relates to the potential substitution of the -- of the

1  copyist's product for the products that have been copied.  That

2  is a completely different issue.  The fair-use analysis is

3  completely different.

4      In terms of copying for training, we're dealing -- for

5  example, with the New York Times, they copied four-million-plus

6  articles, as opposed to copying, for the book plaintiffs, one

7  book, two books.  Completely different issues.  And not only

8  did they copy for training, they recopied multiple times.  They

9  copied it in a way that would cause the machine to memorize and

10 then regurgitate New York Times and Daily News content.

11     So the facts are very, very different.  There's a -- you

12 know, the general similarity, there is training in both, but

13 the facts are very, very different.  And having multiple judges

14 deal with, for example, the fair-use issue is not a problem

15 because, again, it's very fact-specific to the particular case.

16     And by the way, there are now 38 cases around the country

17 against a dozen or more artificial intelligence entities --

18 Meta, Perplexity, entities like that -- that are going on right

19 now.  So Mr. Van Nest says that somehow this is going to be a

20 panacea, we'll have one judge who will resolve every artificial

21 intelligence case.  There's not true.  There are 38 of them

22 right now.

23          JUDGE CALDWELL:  Judge Gorton.

24          JUDGE GORTON:  So, again, why not centralize the class

25 actions under the news cases, but not the DMCA and the

1 individual cases?

2          MR. LIEBERMAN:  So the class action -- well, first of

3 all, the class action cases -- the ones in the Southern

4 District of New York, I understand, are on behalf of authors of

5 books.  Very, very different.

6      And by the way, if you want to centralize all of those

7 together in the Southern District of New York, where Judge Wang

8 has been working on this for a year and has held multiple

9 hearings and Judge Stein has resolved issues, we don't have a

10 problem with that if you believe that it needs to be done.

11 The -- but there are tremendous differences, again, factual

12 differences.

13      And in terms of depositions, you asked about

14 centralization, why not centralize them?  Right now the dispute

15 between the parties is, do OpenAI witnesses get deposed once or

16 do they get deposed once or maybe twice?  Because all these

17 Southern District of New York entities, all of the Southern

18 District of New York plaintiffs, have agreed that, for 30(b)(1)

19 witnesses, we will try to take those depositions at the same

20 time that they're taking place in California if scheduling

21 permits.  The 30(b)(6), we will do the same thing so long as

22 they substantially complete document production with respect to

23 the topic as to which that witness has been designated.  Not

24 an unreasonable request.  So is it going to be one deposition

25 or two?

1        By the way, there was reference to 30 experts.  There are

2  no 30 experts in this case.  Most of those, probably 20 or

3  more, are people who were identified under the protective order

4  just so that they could look at these repositories of code, to

5  help with the code.

6        This case has been handled very well in the Southern

7  District of New York by Judge Stein and Magistrate Judge Wang.

8  We'd ask you leave it there.  If you consolidate in California,

9  if you take it away from Magistrate Judge Wang and Judge Stein,

10  we're going to be starting this very complicated discovery

11  process all over again.  And your Honors know --

12            JUDGE CALDWELL:  Thank you.

13            JUDGE KENNELLY:  I just need to say this.  I don't

14  need AI to tell me who won the White Sox game last night.  As a

15  fan, I know it wasn't the White Sox --

16        (Laughter.)

17            JUDGE KENNELLY:  -- but it's pretty common for us, not

18  in this -- necessarily in this context, but let's say in a mass

19  drug context -- to have the exact same situation you're talking

20  about, lots of different facts, different doctor, took the drug

21  for a different amount of time, different injuries, and so on,

22  and we still centralize cases like that.  Are you saying -- are

23  you saying that there's nothing -- there's no common issue in

24  fact that cuts across all these cases?

25            MR. LIEBERMAN:  Obviously there are some, but we think

1  they are far outweighed by the differences.

2      And remember, we've been dealing for a year now with

3  discovery of OpenAI and Microsoft.  We've been dealing with

4  discovery about this for a year in the Southern District.  If

5  this case goes to California, the California courts have no

6  experience with discovery --

7      JUDGE KENNELLY:  I wasn't asking you about where.  I'm

8  just asking you about whether --

9      MR. LIEBERMAN:  There is a modest overlap between the

10  newspaper cases.  The facts that are different vastly outweigh

11  the facts that are the same.

12      JUDGE KENNELLY:  All right.  Thanks.

13      JUDGE CALDWELL:  Anybody else?  Judge Benitez.

14      JUDGE BENITEZ:  Very quickly.  So I guess the answer

15  to my question originally was that there are common questions

16  of fact.  Right?

17      MR. LIEBERMAN:  I would say de minimis, but there are

18  some.

19      JUDGE BENITEZ:  De minimis, but there are some.

20  Right.  And then I guess your suggestion is that, if it's going

21  to be centralized, that it be centralized in New York, not in

22  the Northern District of California.  Do I have that right?

23      MR. LIEBERMAN:  That's correct.

24      JUDGE BENITEZ:  Great.  Thank you.

25      JUDGE CALDWELL:  All right.  Any other questions?

1          Thank you for your argument.

2              MR. LIEBERMAN:  Thank you, your Honors.

3              JUDGE CALDWELL:  Mr. Topic.

4              MR. TOPIC:  Good morning.  Matt Topic, from Loevy &

5    Loevy.  I'm also from Chicago.  Judge Kennelly stole my joke

6    about the White Sox.  I represent Intercept and Raw Story, who

7    we've been calling the DMCA plaintiffs.

8          OpenAI is correct.  The scope of the case is narrower.  In

9    fact, they disclosed about half of the main witnesses and much

10   fewer subjects in their Rule 26 disclosures.  They're also

11   correct we have a September 29th, 2025, ready-for-trial date in

12   front of Judge Rakoff.  We fully expect to meet that.

13         We are already informally coordinating depositions and

14   document discovery with the other cases, both the California

15   and New York cases.  We'll be basically piggybacking on those

16   depositions as they occur, and that will be beginning -- within

17   two weeks, those will be -- those will be starting.

18         And just the final point I'll make on experts is, to my

19   knowledge, there is no overlap in experts between our experts

20   and the experts in the other cases for the other plaintiffs.  I

21   presume OpenAI probably will have some overlapping experts

22   there, but we do not.  And with that, I'm happy to take any

23   questions.

24             JUDGE CALDWELL:  Questions?

25             JUDGE KIMBALL:  Apparently, there are two people in

1  the room who care who won the White Sox game.

2          JUDGE KENNELLY:  I didn't say I cared.  I said I knew.

3      (Laughter.)

4          JUDGE BENITEZ:  I care.

5          JUDGE CALDWELL:  Any other questions, baseball-related

6  or not?

7      Thank you very much for your argument.

8      Mr. Saveri.

9          MR. SAVERI:  Good morning.  I'm Joseph Saveri from San

10 Francisco, California, on behalf of the Northern District of

11 California plaintiffs.  So first, let's talk about how we got

12 here.

13     First, OpenAI was for consolidation and coordination when

14 they agreed with us in support of our first-to-file motion.

15 Then they were against it when Judge Martínez-Olguín entered a

16 pretrial schedule in our case that they didn't like.  And now

17 they're for it again now that the cases are proceeding and

18 depositions have been scheduled.

19     So we've got -- we've gone 360 degrees on this.  And why

20 is that?  I think there are really two apparent reasons.  One,

21 I think that the -- that OpenAI is trifling with these issues

22 of centralization in order to serve their strategic interests.

23 And I think, candidly, they're forum shopping and looking for

24 the best judge.  And that's actually what's going on here.

25     All of the issues with -- that we've been hearing about

1 with coordination and the problems we've been having are

2 entirely hyperbole at this point from my perspective.  The only

3 reasons we're not coordinating is because OpenAI is refusing to

4 do that.

5      We have taken a number of depositions in this case.  We've

6 proceeded with those depositions in coordination with the

7 Southern District of New York plaintiffs.  We've reached

8 agreements on time.  We're not duplicating depositions for any

9 particular witnesses.  We are exchanging document productions

10 in cases.  We are cross-noticing third-party depositions.  All

11 of that is happening.

12      So the panel has consistently recommended that the parties

13 try to organize this privately, and that's exactly what's

14 happened here.  And I think it would be a mistake to send the

15 wrong message that, now that we've tried that and largely

16 achieved that, we are going to unwind that.

17      And so I think it's working.  We have a discovery cutoff

18 in our case in less than -- in about six weeks.  We certainly

19 want to meet that.  We want to comply with the pretrial

20 schedule we've had in this case.  And we wouldn't want anything

21 about these panel proceedings to disrupt them.

22           JUDGE CALDWELL:  Thank you.

23      Questions?

24           JUDGE ARLEO:  So you said you're going to be wrapping

25 up discovery in six weeks.  How many depositions have you taken

1  to date?

2          MR. SAVERI:  We've taken -- there have been four

3  depositions of defendants.  There have been two of our

4  plaintiffs.  The rest of the schedule is -- we have dates --

5          JUDGE ARLEO:  How many are left to take?

6          MR. SAVERI:  I believe, of the parties, about

7  somewhere around 20.

8          JUDGE ARLEO:  Twenty in six weeks?  And how many

9  nonparties?

10          MR. SAVERI:  I think that there will be probably

11  another 10 to 20 parties, but we also --

12          JUDGE ARLEO:  So 40 depositions in six weeks, that's

13  the goal?

14          MR. SAVERI:  It is the goal.

15          JUDGE ARLEO:  Is that a realistic goal?

16          MR. SAVERI:  Is it a -- excuse me?

17          JUDGE ARLEO:  A realistic goal.  I mean, you make it

18  sound like discovery is already done, almost done, in six

19  weeks.  You've taken four?

20          MR. SAVERI:  Yes.

21          JUDGE ARLEO:  And you have 30 to take -- you have 40

22  to take?

23          MR. SAVERI:  And, your Honor, we're -- this is an

24  important case with lots of lawyers.  We're prepared to take --

25  to double-track the depositions.  Now, part of the reason we

1   haven't been able to space those depositions out is because

2   OpenAI is unwilling to do that.  They are forcing us into that.

3   But this is an important case with lawyers who are willing to

4   prosecute this case, so we're willing and prepared to do that.

5           JUDGE ARLEO:  Thank you.

6           JUDGE BENITEZ:  So what's the downside of

7   centralizing?

8           MR. SAVERI:  The downside to centralizing at this

9   point would be that, after we've done all this work and we've

10  spent all this time and effort chasing OpenAI -- and we've

11  finally gotten a discovery schedule that works, we've produced

12  documents, and we're well on our way -- to have the

13  centralization process set that back.

14      There's something fundamentally unfair about having asked

15  for this from our perspective in the first place, OpenAI

16  resisting that, and then we went about trying to coordinate

17  with the other lawyers throughout the country and have been

18  largely successful.  And now to have that unwound, I think, is

19  profoundly unfair and contrary to the interests of justice from

20  our perspective.

21          JUDGE ARLEO:  Have you served expert reports?

22          MR. SAVERI:  No -- no -- no, your Honor.  We -- we --

23  to address the expert issue, because this is a highly technical

24  case, the protective order requires that, in order for experts

25  to review the documents, we have to designate them and give the

1  opportunity to the other side to say we object.  We haven't

2  come to the expert disclosure, the Rule 26 disclosure, process.

3         JUDGE ARLEO:  When is that contemplated by your

4  schedule?

5         MR. SAVERI:  In another two or three months, after

6  the -- the way that the discovery is set off is that there's

7  percipient witness discovery and then, following that, the

8  experts.  So the experts will -- the experts will come after

9  that.

10        JUDGE CALDWELL:  Other questions?

11        MR. SAVERI:  I guess I would say that, if -- if --

12 there are common issues in this case.  I want to be very clear

13 about that.  I -- Judge Benitez, I agree with you that there

14 are over-arching, common issues in this case.  There's no doubt

15 about that in my mind.  I just think, given where we are and

16 given the contrary position that the movant has taken, we

17 should be allowed to do what Judge Martínez-Olguín said, which

18 is they made their bed and now they -- and so, at some level,

19 they should -- they should -- they should deal with the

20 consequences of that.

21        JUDGE CALDWELL:  Thank you for your argument.

22        MR. SAVERI:  If we're going to be centralized in New

23 York, we would be okay -- we would support Judge Rakoff.  If I

24 had a second choice --

25        JUDGE CALDWELL:  Thank you for your argument.

1          MR. SAVERI:  Thank you.

2          JUDGE CALDWELL:  Ms. Geman.

3          MS. GEMAN.  Thank you.  Good morning, your Honors.

4  Rachel Geman, Lieff Cabraser, for he New York class plaintiffs.

5  I realize I'm last for the plaintiffs.  I won't repeat what my

6  colleagues said about how the, in fact, small cases in courts

7  are collectively and efficiently availing themselves of

8  coordination options.

9          And I agree with their level set on depositions.  We, the

10  New York class plaintiffs, have joint depositions with our

11  friends in the Northern District of California.  And, you know,

12  given our frankly unremarkable insistence on getting documents

13  before depositions, which will be happening soon, we will also

14  be joining with the news plaintiffs.

15          I did want to note that, in addition to the other points

16  made, we have been operating under a stipulation for more than

17  a year, pursuant to which defendants expressly agreed not to

18  seek centralization.  Now, this was a negotiated thing, and

19  it's not because -- with all respect to Microsoft counsel, it's

20  certainly not the law in the Second Circuit that summary

21  judgement comes first, but, indeed, was an agreement we

22  reached.

23          In the wake of that -- but what's relevant for this court,

24  which is focused not on private agreements, but on efficiency,

25  in the wake of that agreement, we have been working

1   cooperatively to achieve non-duplication short of

2   centralization.  And in the wake of that agreement, there was

3   briefing by multiple judges that have rejected the exact

4   arguments that defendants are making now.

5        We consider that the clock is really wound on the schedule

6   as it is.  We certainly do like -- and Mr. Saveri has

7   acknowledged there are common issues, but we also note that,

8   you know, the fair-use defense is fact-specific and

9   use-specific.

10       Your Honors have asked about why not centralize the news

11  and class cases.  Just to set the table a bit, most of the news

12  and class cases are already coordinated in the Southern

13  District of New York, our case, which represents authors

14  against Microsoft and OpenAI, and the news cases.

15       The vast majority -- this is not surprising given the

16  industries -- the proceedings against Microsoft have been

17  proceeding for a year and more.  It is -- if there is

18  centralization, we respectfully submit that the SDNY is the

19  logical place because, you know, there's a marginal difference

20  between what there is now and what there would be with these

21  small -- and we are all sophisticated counsel who could --

22            JUDGE CALDWELL:  Your time is up.

23            MS. GEMAN:  Thank you.

24            JUDGE CALDWELL:  Judge Kennelly.

25            JUDGE KENNELLY:  You said that the fair-use defense

1 is -- you said fact-specific and use-specific, but wouldn't the

2 various groups of content produced here fall into categories?

3 I mean, it's not 10,000 fact-specific things, right?

4        MS. GEMAN:  No, it's not 10,000 fact-specific things,

5 but it is worth, perhaps, underscoring that in the New York

6 case we represent authors with registered copyrights, and we

7 are focused on training.  You know, there's use issues about

8 illegal acquisition, there's use issues about training.  And

9 then I believe Mr. Lieberman talked about some of the new

10 specific issues.  So certainly it's not 10,000 --

11        JUDGE KENNELLY:  Seems like it's a limited number of

12 buckets, though.

13        MS. GEMAN:  I think it is -- I think it is a limited

14 number of buckets, but I think that's perfectly reflected in

15 the current status, where we have related, not centralized,

16 cases, and we are working very cooperatively.  I think, given

17 the current status quo, it's capturing it.

18        JUDGE CALDWELL:  Thank you.  Other questions?  Hearing

19 none, we thank you for your argument.

20     And, Mr. Van Nest, you have one minute.

21        MR. VAN NEST:  Thank you, your Honor, and panel

22 members.  I think you have cleared out most of the issues.

23 Judge Kennelly and Judge Benitez smoked it out.  Training is

24 all they're complaining about, and that's a common issue across

25 all these cases.

1      This case is not well-advanced at all.  Judge Arleo hit

2   the nail on the head.  Both class plaintiffs are seeking to

3   amend their complaints to add parties and to add claims.  Both

4   class plaintiffs and the news plaintiffs are seeking a minimum

5   of 60 more days to complete discovery because, as Judge Arleo

6   pointed out, you can't get it done in the time we have.

7      These cases should be centralized so we don't have the

8   chaos of five different district judges and two magistrates.

9   We won't lose the work of Judge Wang.  She's limited discovery.

10  Both sides have gotten rulings that helped and hurt their

11  cases.  That's right, she's been working hard, but this case

12  should be centralized in California.  Why?  Everything that

13  happened, happened there.  All the companies are there.

14  Microsoft is there, OpenAI is there, all the witnesses are

15  there, the third parties are all there.  This technology is

16  being developed there, that's where it's happening, and that's

17  where all the witnesses are in existence today and for the

18  foreseeable future.

19           JUDGE CALDWELL:  Judge Kennelly.

20           JUDGE KENNELLY:  So a lot of shade got thrown your

21  client's way on this whole thing about changing positions and

22  making your bed and having to sleep in it.  Can you just sort

23  of briefly respond to that?

24           MR. VAN NEST:  Sure.  When we first considered coming,

25  there were only three cases, and they were -- they were kind of

1 similar.  We felt that, with that kind of situation, the panel

2 guidance would be try to get voluntary coordination before you

3 come here.  I've read many cases where you turn it down because

4 people didn't try.  We tried.  We tried like crazy.

5     We've had months of negotiations, months of trying to get

6 -- we've bent over backwards.  We asked for a single deposition

7 per witness across all cases.  We offered two days for the

8 witnesses, 12 hours.  We said -- we just -- we don't want

9 witnesses coming back and back and back.  And they refused.

10 They walked away.  We thought we could get a deal; we didn't.

11 And now the first four depositions proved my point.

12          JUDGE KENNELLY:  So the short answer is that

13 circumstances are different from when you --

14          MR. VAN NEST:  Very different.  We tried for months,

15 your Honor, and to no avail.

16          JUDGE KENNELLY:  Thanks.

17          MR. VAN NEST:  And now we're asking -- we came

18 reluctantly because we thought early on we could get

19 coordination.  We always carved out the right to seek

20 centralization if circumstances changed and more cases were

21 filed, which they were, and cooperation was not forthcoming.

22 We absolutely reserved --

23          JUDGE CALDWELL:  Other questions?

24     Thank you.

25          MR. VAN NEST:  Thank you, panel members.

 1          JUDGE CALDWELL:  That concludes the arguments in MDL

 2 No. 3143.

 3      (Time noted:  10:22 a.m.)

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4

 5          I, DEBORAH COHEN-ROJAS, Federal Official Court

 6  Reporter for the United States District Court for the Western

 7  District of North Carolina, a Registered Diplomate Reporter,

 8  Certified Realtime Reporter, and Federal Certified Realtime

 9  Reporter, do hereby certify that I reported by machine

10  shorthand the foregoing proceedings contained herein on the

11  aforementioned subject on the date herein set forth, and that

12  the foregoing pages constitute a full, true and correct

13  transcript.

14

15          Dated this 28th day of March, 2025.

16

17

18

19

20  _____

21          DEBORAH COHEN-ROJAS
            RDR, CRR, FCRR
22          Federal Official Court Reporter

23

24

25
```